THE STATE *ex rel.* HIRNI, *Collector*, v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

In Banc, June 18, 1894.

Constitution: TAXATION: TOWNSHIP ORGANIZATION. Township taxes imposed under the township organization law are taxes for "county purposes" within article 10, section 11, of the constitution of 1875, limiting the rate of taxation for such purposes.

*Appeal from    Bates    Circuit    Court.*—HON. JAMES H.
LAY, Judge.

REVERSED.

*R. T. Railey* for appellant.

(1) The intent of the framers of the constitution should govern in interpreting its provisions. Cooley's Const. Lim. [6 Ed.], 69. (2) In determining such intent it is proper to consult the status of public affairs at the time and the causes which led to its adoption. (3) The constitutional limitation prescribed in section 11 of article 10 applies to townships as fully as if in terms they had been designated therein. *State, etc., v. Brassfield,* 67 Mo. 331; see, also, *State, etc., v. Columbia,* 111 Mo. 365; *Barnard v. Knox Co.,* 105 Mo. 382; *Black v. McGonigle,* 103 Mo. 192; *Arnold v. Hawkins,* 95 Mo. 569; *Book v. Earl,* 87 Mo. 246; *Center Bldg. Co. v. St. Joseph,* 108 Mo. 304. (4) If the court should hold that there is no limitation in our constitution on the taxing power of township organizations, except that provided by the legislature, then we insist that the taxes thus collected are special and can only be collected by complying with the "Cottey" law, as set forth in sections 7653 and 7654 of the Revised Statutes of 1889. Section 7656 construes the preceding section and we think covers the case at bar. If it is a special tax, as contended for, then, under the agreed statement of facts, the appellant is entitled to a judgment herein. *State ex rel. v. Railroad,* 87 Mo. 236; *State ex rel. v. Hager,* 91 Mo. 452.

*C. F. Boxley,* Prosecuting Attorney, and *C. A. Denton* for respondent.

(1) Townships in counties not under township organization are mere geographical subdivisions of a

county and in no sense a corporation, while townships in counties under township organization, are corporate bodies. *Webb v. Lafayette Co.*, 67 Mo. 353; R. S. 1889, sec. 8429. (2) The constitution of Missouri (1875) expressly empowers the legislature to enact such laws, as shall be deemed necessary to enable counties, to adopt township organization. Sec. 8, art. 9, Const. Mo. 1875; (Compare) sec. 5, art. 10, Const. Ill. 1870. (3) A township in a county that has adopted township organization as provided by the acts of the general assembly of this state, chapter 162, Revised Statutes, 1889, is a municipal corporation, within the meaning and intent of sections 1 and 10, article 10, of the constitution of this state. R. S. 1889, sec. 8429; *Railroad v. McCleave*, 108 Ill. 368; *State ex rel. v. Leffingwell*, 54 Mo. 458; *State ex rel. v. Board*, 112 Mo. 213; *Wilson v. Board*, 133 Ill. 477; 27 N. E. Rep. 203; 15 Am. and Eng. Encyclopedia of Law, pp. 953, 954, and notes; *Agr. Soc. v. Houseman*, 81 Mich. 609; 46 N. W. Rep. 15. (4) A township in a county under township organization, as a municipal corporation, is empowered under general laws to levy and collect taxes, for its corporate purposes. Secs. 1, 10, art. 10, Const. Mo. 1875; (Compare) sec. 9, art. 9, Const. Ill. 1870; *Railroad v. McCleave*, 108 Ill. 368; *Wright v. Railroad*, 120 Ill. 544; 12 N. E. Rep. 240; *Macon Co. v. United States*, 134 U. S. 332. (5) The fact that the county court may have levied the taxes here sought to be recovered, detracts nothing from their validity. R. S. 1889, secs. 8482, 7730, 7731; *Railroad v. McCleave*, 108 Ill. 368; *State ex rel. v. Byers*, 67 Mo. 706; *State ex rel. v. Clerk*, 85 Mo. 156. (6) The legislature of this state has the power and authority, unless expressly restrained therefrom by the constitution, to create municipal corporate townships and provide for their maintenance. Cooley on Const. Lim. [5 Ed.],

pp. 105, 106, 228, 229; *Wilson v. Board*, 133 Ill. 477;
27 N. E. Rep. 203; *Harris v. Board*, 105 Ill. 445;
44 Am. Rep. 808. (7) In construing the constitution
of a state, it is to be presumed that language has been
employed with sufficient precision to convey the intent
of the people, who adopted it, and, unless an examina-
tion demonstrates that the presumption does not hold
good in the particular case, nothing will remain, except
to enforce it. Possible, or even probable, meanings,
when one is plainly declared in the instrument itself,
the courts are not at liberty to search for elsewhere.
Cooley on Const. Lim. [5 Ed.], 68; *People v. Purdy*,
2 Hill, 35; *Hamilton v. Co. Court*, 15 Mo. 3; Murphy
Glover Test Oath Cases, 41 Mo. 339.

BRACE, J.—This is an action by the collector of
Bates county to recover unpaid taxes for the years
1889 and 1890 in which the plaintiff obtained judgment
in the trial court and the defendant appeals. Bates
county is under township organization. The assessed
value of the property in that county on which taxes
were levied for those years was over $6,000,000 and under
$10,000,000. In addition to a county tax of fifty cents
on the $100 levied upon the property of the defendant
in those years, there was levied an additional tax of
twenty cents on the $100 called a township tax. The
former the defendant paid, but refused to pay the latter,
to recover which this suit is brought.

The facts are agreed to. The question of differ-
ence is as to the authority of the county court of Bates
county to levy the above named township tax amount-
ing to the sum of $654.50. The plaintiff contends
that the county court has authority to levy for county
purposes not exceeding forty cents on the $100 valua-
tion, and also the right to levy a township tax at a rate
not to exceed twenty cents on the $100 valuation. The

defendant contends that the township tax sued for is a tax for county purposes within the meaning of the constitution, and the county court, having levied forty cents on the $100 valuation, for county purposes, thereby exhausted its power under the constitutional limitation and the tax sued for, being in excess of forty cents on the $100 valuation, levied for said purposes, is void.

Under the township organization act the moneys necessary to defray the township charges of each township are required to be levied of the taxable property in such township in the manner prescribed in the general revenue law for state and county purposes (R. S. 1889, sec. 8478), and to this end the township board of directors is required to make out an account of the amount of money necessary to defray the expenses of the ensuing year, prior to the meeting of the county court at which the assessment for county purposes is to be made; said account signed by the president of the board and attested by the clerk is to be filed with the clerk of the county court on or before the first day of said court, who shall cause the same to be placed upon the tax books of said township, *"provided* that said expenses shall not, together with the amount levied for road purposes and special bridge tax, exceed in any one year twenty cents on the one hundred dollars valuation."   Section 8482.

Taxes to meet such charges are levied by the county court. Sections 7660 and 7731. The purposes for which they are raised and to which they must be applied are township expenses, and for roads and bridges. The township expenses being compensation of township officials, and incidental expenses in discharging official functions which in counties not under township organization are discharged by the county officials, and all the charges are such as in counties under normal

organization would come under the head of expenditures for county purposes. Prior to 1872 township organization was unknown to our laws. Townships had no corporate existence; they were "mere geographical divisions of a county, made principally for election purposes, in each of which, the people might elect a constable and two justices of the peace." *Webb v. Lafayette Co.*, 67 Mo. 353. The first act of the legislature providing for such organization was approved March 18, 1872. Sess. Acts, 1872, p. 180. In the following year that act was repealed and a new one adopted. Sess. Acts, 1873, p. 94.

Prior to the adoption of the latter act, which was in effect a revision of the former one, the opinion of the judges of this court was solicited by a resolution of the house of representatives as to the constitutionality of the act, in answer to which a majority of the judges replied that: "Counties are subdivisions of the state for govermental purposes, and there can be no doubt about the constitutional power of the general assembly to create, alter, abolish and regulate them as expediency may demand, so that no vested rights are interfered with. This township organization law contains no provision, so far as we are able to see, prohibited by the constitution." 55 Mo. 295. While by its provisions townships were made bodies corporate in such counties as might adopt it, their powers were limited simply to the discharge, through township officers, of some of those governmental functions within its borders, which in other counties were exercised by the county as a whole through county officers. The autonomy of the county government was not disintegrated or destroyed thereby. Some of its powers, duties and burdens were simply distributed to its townships. In other words, townships under this organization existed, not for any separate and independent corporate purposes, but sim-

ply as integral parts of a county exercising a part of the functions of the county government. The county sustained the same relation to the state at large as before. The townships existed only for the purpose of county government. At the time of the adoption of the constitution of 1875, this scheme of township organization was a new and untried experiment, with which the people of the state were, as a rule, unfamiliar. The idea of a township as a separate and independent municipal corporation with power to levy taxes had no place in the public mind. But the idea of a township having the power, by virtue of an act of the general assembly, to contract a debt which the county court was required to provide for by a levy of taxes upon the property within said township had become painfully prominent through the operation of the township act of 1868 (Sess. Acts, p. 92), and of special charters of some railroad corporations. It will be well to keep these facts in mind when considering the constutional provisions decisive of this controversy.

Prior to the constitution of 1875, the power of the legislature to impose taxes was practically unlimited. It is unnecessary to recall the history of the times which led to the call of the convention which framed it, to impress the mind with the fact that one of the great purposes for which it was assembled was to put a check upon that power. It stands out upon the face of the instrument as the most novel and significant fact in it, and the purpose to limit that power whether exercised immediately for state purposes, or mediately for local purposes is alike apparent. Section 8 of article 10 fixes the rate which is not to be exceeded for state purposes, and section 11 of the same article, the rates that are not to be exceeded for local purposes. That section reads as follows:

"Sec. 11. *Rates for local purposes—limits—how increased for schools and erecting public baildings.*—Taxes for county, city, town and school purposes may be levied on all subjects and objects of taxation; but the valuation of property therefor shall not exceed the valuation of the same property in such town, city or school district for state and county purposes. For county purposes the annual rate on property, in counties having $6,000,000 or less, shall not, in the aggregate, exceed fifty cents on the hundred dollars valuation; in counties having $6,000,000 and under $10,000,000, said rate shall not exceed forty cents on the hundred dollars valuation; in counties having $10,000,000 and under $30,000,000, said rate shall not exceed fifty cents on the hundred dollars valuation; and in counties having $30,000,000 or more, said rate shall not exceed thirty-five cents on the hundred dollars valuation. For city and town purposes the annual rate on property in cities and towns having thirty thousand inhabitants or more shall not, in the aggregate, exceed one hundred cents on the hundred dollars valuation; in cities and towns having less than thirty thousand and over ten thousand inhabitants, said rate shall not exceed sixty cents on the hundred dollars valuation; in cities and towns having less than ten thousand and more than one thousand inhabitants, said rate shall not exceed fifty cents on the hundred dollars valuation; and in towns having one thousand inhabitants or less, said rate shall not exceed twenty-five cents on the hundred dollars valuation. For school purposes in districts, the annual rate on property shall not exceed forty cents on the hundred dollars valuation: *Provided*, the aforesaid annual rates for school purposes may be increased, in districts formed of cities and towns to an amount not to exceed one dollar on the hundred dollars valuation, and in other districts to

an amount not to exceed sixty-five cents on the hundred dollars valuation, on the condition that a majority of the voters who are taxpayers, voting at an election held to decide the question, vote for said increase. For the purpose of erecting public buildings in counties, cities or school districts, the rates of taxation herein limited may be increased when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the people, and two-thirds of the qualified voters of such county, city, or school district, voting at such election, shall vote therefor. The rate herein allowed to each county shall be ascertained by the amount of taxable property therein, according to the last assessment for state and county purposes, and the rate allowed to each city or town by the number of inhabitants according to the last census taken under the authority of the state, or of the United States; said restrictions as to rates shall apply to taxes of every kind and description, whether general or special, except taxes to pay valid indebtedness now existing, or bonds which may be issued in renewal of such indebtedness.''

It can not be doubted that the restrictions contained in this section were intended to apply to every county in the state, whatever its internal organization might be, and that all taxes of every kind and description levied for county purposes, it matters not by whom or how levied and the purposes for which levied, must be within the limits of the rates therein fixed; what is called a township tax, levied in a county under township organization, having been known and recognized from the beginning of the state government as within that class of purposes; the limitation of this section must apply to taxes levied for such purposes, the same as to those for any other county purpose, unless, elsewhere in the constitution is to be found some provision taking counties under township organi-

zation from the operation of its provisions.    As having this effect we are pointed to section 8, article 9, of the constitution, which reads as follows:

"Sec. 8.    *Township organization—county justices.* The general assembly may provide, by general law, for township organization, under which any county may organize whenever a majority of the legal voters of such county, voting at any general election, shall so determine; and whenever any county shall adopt township organization, so much of this constitution as provides for the management of county affairs, and the assessment and collection of the revenue by county officers, in conflict with such general law for township organization, may be dispensed with, and the business of said county, and the local concerns of the several townships therein, may be transacted in such manner as may be prescribed by law: *Provided*, that the justices of the county court in such case shall not exceed three in number."

We fail to discover anything in this section tending to support the contention that by it, counties under township organization might be removed from the limitations imposed by section 11, article 10. The only dispensation provided for therein is "of the management of county affairs, and the collection of revenue by county officers." There is not a word in the section to give color to the idea that any limitations imposed by the constitution upon the revenue to be raised for any purpose could be dispensed with, but simply the mode by which the revenue is to be collected. Nor does the fact that townships are named in section 12, article 10, limiting municipal indebtedness, and not in section 11, tend to show that the limitations of the latter section might be dispensed with in counties under township organization. It was not necessary that taxes for township

purposes should be mentioned in section 11, for, as we have seen, they were included in taxes for county purposes. But it was necessary in section 12, for the reason that the legislature, through county organizations, had before the adoption of the constitution, in many instances undertaken to impose upon the property of the citizens of a township as such, burdensome debts for purposes other than governmental, and the purpose of this section was to place a limit upon the power to do so in the future. As before intimated, townships, as independent, tax levying powers for governmental purposes were unknown to the people of the state. But as geographical subdivisions of a county on whose account it was supposed debts might be incurred under the authority of the legislature through the county organization for purposes other than governmental, they occupied no small share of popular attention at the time. The improvident exercise of this legislative power was another one of the great wrongs which the constitution of 1875 undertook to remedy for the future, in the enactment of section 12. Hence townships are named in that section and not in section 11. It was necessary in the one case and not in the other and plaintiff's contention receives no support from this fact.

We fail to discover, anywhere in the language of the constitution, an intention to make any distinction between counties that might adopt township organization and those that remained under their original county organization, as to the rate of taxation that should be allowed to be levied in each for governmental purposes. No reason can be given why any such distinction should be made. The exigencies of each class are the same, and the same reasons exist for a limitation upon the taxing power to meet them in the one case as in the other. The mere change of the

mode of administering county government does not, and can not, change the purpose for which taxes are raised to conduct that government, and as the purpose remains the same in each, so the limitations must be the same in each. This must be so, or the framers of our constitution have wrought in vain to limit the expenses of county government, and their whole legislation on this subject may be set at naught. For, to defeat it entirely, it will only be necessary for all the counties of the state to adopt township organization, and the legislature may then authorize them in addition to the taxes allowed by the constitution for county purposes to levy township taxes *ad libitum*. A construction of the constitution which would thus authorize the defeat of one of its main purposes, can not be entertained for a moment.

Counsel for plaintiff, in support of their contention, cite *Macon County v. Huidekoper*, 134 U. S. 332, and *Railroad v. McCleave*, 108 Ill. 368, and some subsequent cases in that state recognizing its authority. In the *Macon county case*, which was mandamus to the county court to compel the levy of additional taxes to pay a judgment upon interest coupons detached from certain bonds issued May 2, 1870 by that county to the Missouri & Mississippi Railroad Company under the authority of the thirteenth section of the act incorporating the company, approved February 20, 1865, Justice FIELD, in delivering the opinion of the court, said: "In this case it appears that for the year 1885 the county had levied only thirty cents on every one hundred dollars of property, but it set up in its answer that it had levied fifty cents, treating the twenty cents which had been levied by the boards of townships for township and bridge purposes as part of the fifty cents. The township is a separate organization from that of the county, with authority to purchase and hold real

estate and make contracts and control its corporate property, and its taxes levied for those purposes over which it has control can in no just sense be termed taxes for county purposes. There can be, therefore, no valid objection to the county's levy of an additional twenty cents on the one hundred dollars to make up the fifty cents which it is authorized to levy to meet its expenses and liabilities."

The foregoing extract contains the whole of the consideration given the subject in that case. It simply assumes that townships in this state are independent municipal corporations with power to levy taxes for its own purposes, and therefore taxes levied for such purposes are not county purposes. While this conclusion might be predicated upon the powers of "townships" known as "towns" in the laws of Illinois, and the New England states, it can not be of townships under township organization in this state, which, as before stated, exist here, not as separate and independent municipal corporations, but simply as adjuncts or branches of county government, all of whose purposes are county purposes, and have been known and recognized as such from the beginning of our state government. In Illinois, as early as 1848, provision was made for township organization by the adoption of section 6, article 7 of the constitution, which reads as follows: "The general assembly shall provide, by a general law, for a township organization, under which any county may organize whenever a majority of the voters of such county, at any general election, shall so determine; and whenever any county shall adopt a township organization, so much of this constitution as provides for the management of the fiscal concerns of the said county by the county court may be dispensed with, and the affairs of said county may be transacted in such manner as the general assembly may provide."

This constitution contained no limitations upon the power of the legislature to authorize the collection of revenue for local purposes. On the contrary by section 5, article 9 of that constitution it was expressly provided that: *"The corporate authorities* of counties, *townships*, school districts, ·cities, towns, and villages, may be vested with power to assess and collect taxes for corporate purposes." In the following year under these provisions the legislature, on the twelfth of February, 1849, passed a township organization act, by which the fiscal concerns of a county might be placed under the management of township authorities, by a vote of the citizens of the county, and these authorities were invested with power to levy and collect taxes, and thereby townships became corporate bodies for municipal purposes by the name of "towns," the particular name of each being in accordance with the expressed wish of its inhabitants. Pub. Laws of Ill., 1861, p. 216, *et seq.* This system prevailed in some of the counties of that state at the time of the adoption of the constitution of 1870. The distinction between county authorities and town authorities was plain, and well marked in the laws of the state, and must have been well understood by the people after having been maintained for more than twenty years in their midst. Under such circumstances section 8 of article 9 of that constitution was adopted, by which it was provided that: *"County authorities* shall never assess taxes, the aggregate of which shall exceed seventy-five cents per $100 valuation, except for the payment of indebtedness existing at the adoption of this constitution, unless authorized by a vote of the people of the county."

In construing this section of the constitution the supreme court of Illinois held in *Railroad v. McCleave, supra*, that the towns in Illinois, under its township organization law, are municipal corporations, with

power to levy taxes for corporate purposes, and that such taxes levied by the town authorities are not limited by this provision of the constitution. This holding can have little persuasive force in construing the provisions of our own constitution upon this subject. Under their constitution and laws the *towns* in counties adopting township organization stood upon the same plane with counties, cities, towns, villages and school districts, with like power to assess and collect revenues. And the management of their fiscal concerns was under the control of the town authorities. The limitation of their constitution was upon the powers of the county authorities to levy taxes, and not upon the power of the town authorities, while the limit in our constitution is not upon the authorities levying the tax, but upon the purposes for which the taxes are to be levied, and with respect to revenue. Townships in Missouri, under its constitution, can not stand on the same plane with counties, cities, towns and school districts as tax-levying municipalities, for by its provisions only "the assessment and collection of the revenue by county officers," can be dispensed with. The revenue remains the same after as before township organization, the purposes for which it is raised are the same, and the limitations must be the same, and we can but hold that the county of Bates in levying the tax sued for in excess of forty cents on the hundred dollars exceeded its power and that the tax is void.

It would be strange indeed, if it were true, that under our constitution and laws the county of Bates, and the few other counties that have adopted township organization, are permitted to raise revenue at any rate the legislature may see proper to fix, while all the counties of the state maintaining their normal organization, are confined within the limits of the constitution; that the thing plainly prohibited, and which can not be

*directly* done, may, by the mere machinery of such an organization, be indirectly done. We do not think our laws are in any such anomalous condition. The judgment is reversed. BLACK, C. J., SHERWOOD, MACFARLANE and BURGESS, JJ., concurring. BARCLAY and GANTT, JJ., dissenting.

BARCLAY, J. (*dissenting*).—We dissent from the ruling that all taxes imposed by the township organization are within the limitations defined by section 11 of article 10 of the constitution.

That section opens with language relating to taxes for county, city, town and school purposes. It then limits the rate of taxation for each of those classes.

The word "town," as found in that section, is not, we think, intended to include townships. If it did include them, of course, the tax now in dispute would be plainly valid under that authority. But we do not consider that to be the fair import of the word "town," as there employed.

The language used indicates, however, that, although cities, towns and school districts may compose a part of the territory of a county, they are to be, nevertheless, regarded as separate municipal corporations in respect of their exercise of the power of taxation.

In the section which next follows, namely, section 12, we observe, in the opening lines, that "no county, city, town, township, school district or other political subdivision of the state shall be allowed to become indebted," etc., without the assent of the voters, etc.

This classification casts light on the meaning of the section next preceding by suggesting the idea that townships are to be taken and regarded as municipal subdivisions of the state quite separate and distinct

from counties, with reference to the creation of indebt-
edness and the levy of special taxes to meet the same
(authorized in certain circumstances by section 12.)

In the second proviso of that section the class of
municipalities to which the section is to apply are again
mentioned, among them, "townships," as if to indicate
more emphatically that they are not to be confounded
with cities or counties in reference to the use of the
taxing power.

Reading sections 11 and 12 together, it is clear
that the latter is intended to apply to townships and
the former is not.

In other parts of the organic law, counties and
towns are distinctly referred to as separate classes of
municipal corporations. Art. 4, secs. 47, 53; art. 9,
secs. 6, 19.

It should further be borne in mind that section 8
of article 9 of the constitution gives express authority
for the legislation which regulates township organiza-
tion. That section also makes a distinction between
the "business of the county" and the "local concerns
of the several townships," while authorizing special
provisions of law concerning the mode of assessment
and of collection of revenue in counties wherein town-
ship organization prevails.

By the law governing those organizations, they are
declared bodies corporate and invested with important
functions, namely: to sue and be sued; to purchase
and hold real and personal property, necessary to the
exercise of corporate powers; to dispose of property;
and to buy land, at sales, if necessary to secure any
debt. R. S. 1889, sec. 8429.

The township is also authorized "to levy all taxes
for township, road and bridge purposes." R. S. 1889,
sec. 8473.

These taxes are imposed by the action of the township board of directors. R. S. 1889, sec. 8473.

But the amount of the township tax is limited by the law to twenty cents on the $100 valuation, in any one year, except in certain large counties where the aggregate township tax is to be lower. R. S. 1889, sec. 8482.

The township charges are also defined by statute, namely: the compensation of township officers; contingent expenses necessarily incurred for the benefit of the township; and moneys authorized to be raised for its use. R. S. 1889, sec. 8477.

The taxes laid for township purposes are to be ascertained, assessed and levied by the township officers; and collected and applied to township purposes by them.

The townships organized, under chapter 162 (R. S. 1889), have wholly different powers of taxation and self-government from those possessed by the congressional townships in other counties not so organized. The latter class was under consideration in *State ex rel. Woodson v. Brassfield* (1878), 67 Mo. 331; but the opinions in that case indicate that it has no application to townships organized under the law now before us.

The question here is whether taxes, sanctioned by the township organization law and duly levied by the township board, can justly be held to be county taxes for county purposes, and thus brought within the limitations placed on taxes for those purposes by section 11 of article 10 of the constitution.

The words found near the close of that section, namely: "said restrictions as to rates shall apply to taxes of every kind and description, whether general or special, except taxes to pay valid indebtedness now existing," etc., surely can not be reasonably construed

to refer to any other classes of taxes than those mentioned in that section. They certainly do not embrace state taxes, for instance, since those taxes are dealt with, and limited in amount, by an earlier section (8) of the same article.

If they include taxes levied by the officers of the organized townships, it must be because those taxes are held to be not merely for "county purposes," but county taxes as well, within the meaning of the constitution.

A vital error which, it seems to us, with due respect, runs through the argument of our learned brother BRACE, is found in the assumption that "the limit in our constitution is not upon the authorities levying the tax, but upon the purposes for which the taxes are levied." Hence, as he finds township taxes to be for "county purposes," he concludes that they are subject to the limitations in section 11 of article 10.

At first glance there seems much force in that position; but how does it appear when we take into account these other provisions of the organic law, viz:

Sec. 1. "The taxing power may be exercised by the general assembly for state purposes, and by counties and other municipal corporations, under authority granted to them by the general assembly, for county and other corporate purposes." (Art. 10, Const., 1875.)

Sec. 3. "Taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws." (Same article.)

Sec. 10. "The general assembly shall not impose taxes upon counties, cities, towns or other municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but

may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." (Same article.)

These sections precede section 11 in article 10, and bear strongly on its meaning. Under them it is too obvious for any extended argument, we think, that the power to tax for "county purposes" must be exercised by the "corporate authorities thereof," that is to say, of the county. And taxes for those purposes must be uniform upon the same class of subjects within the territorial limits of the county, under section 3 of that article.

In view of these very clear mandates of the constitution, can it be soundly held that a tax, levied by township officers upon the taxable property within the territorial limits of the township, to meet the salaries and other expenses of the township government, is a tax levied by the "corporate authorities" of the county; for so it must be levied, if for "county purposes"?

Section 11 itself shows on its face that the tax for "county purposes," which is therein limited in amount, is intended to be the tax levied by the county authorities, as it must be, under the earlier sections of that article. For, toward the close of section 11, it is written: "The rate herein allowed to each county shall be ascertained by the amount of taxable property therein, according to the last assessment for state and county purposes," etc.

The limitation of rate is thus plainly expressed to be upon the tax imposed by the county authorities for county purposes.

We consider that such a limitation can not properly apply to a tax imposed by the township government for township purposes.

It is argued in this connection that it should not

be supposed that the makers of the constitution would place a limit on the power of taxation by cities, towns, school districts, and even the state itself, and yet leave organized townships exempt from any such constitutional limitation.

On the other hand, looking at the subject from a practical standpoint, is there not an obvious necessity for providing these townships, in some manner, with the means essential to maintain their autonomy?

If taxes may only be levied by the organized townships, within the limitation to which the counties are restricted by the constitution, the townships—all of them—could be deprived of the means of life by the act of another municipal corporation, the county, in levying the county taxes to the full limit marked by the constitution, without leaving a margin for the levy of any taxes by the townships to meet their own expenses.

That is exactly what was done in the case at bar.

The county officers imposed taxes for county purposes to the extreme limit allowed under the assessed valuation of the property in the county.   So that if the township taxes are held to fall within the constitutional prohibition as to county taxes, we have the instructive object-lesson of a county exercising the power of drawing from the township its capacity for self support.

The organized township is a different and distinct political entity from the county, as has been already shown; and it would be an extraordinary state of things were the right of the former to raise the funds, necessary for its maintenance, dependent entirely on the will of the officers of the county, a different municipality.

It goes without saying that the constitution might have so declared.   But it also goes without saying that no court should accept that proposed construction of

constitutional language, unless such a purpose was revealed very clearly indeed.

Where any fair and substantial uncertainty as to its import appears, no law should be given a meaning which would lead to absurd and unjust consequences.

Such consequences, too, may rightly be considered in endeavoring to arrive at the probable intention of the lawgiver as embodied in the language he has used to convey his intent. (Rutherforth's Insts. [2 Am Ed.], p. 413.)

We are of opinion that the language of the fundamental law discloses no purpose to surrender the right of existence of all organized townships to the control of the county courts. We think it shows quite another purpose. In authorizing the establishment and maintenance of township organization, section 8 of article 9 of the constitution intended to sanction the grant of those incidental powers essential to make the principal grant effective. *Bane v. Methuen* (1824), 2 Bing. 63; Broom's Maxims [8 Am. Ed.], *pp. 479, 486.

That grant has been made in clear terms by the legislative department of the government in the township organization act. We consider that was fully authorized, or at least not forbidden, by the fundamental law, so far as concerns the matter now in judgment.

The chief object of the township government, indicated by the law of its creation, is the establishment and care of public roads' and bridges. But it has a number of other powers of local self-government, including that of imposing taxes for the current township expenses. We do not believe the constitution intended the existence of these townships to depend merely upon the good will of the county officers.

The legislature has placed a reasonable limit upon the township's power of taxation. (R. S. 1889, sec.

8482.)   That the taxes now in question are within that limit is conceded.

The constitution, it is true, imposed no express limitation upon that power, either because the danger of its abuse within so narrow a field, and so near the source of political power, was thought to be slight; or else the omission was the result of an oversight.

Probably the latter is the real cause, when the proceedings of the constitutional convention in respect of the subject of township organization are considered.

Be this as it may, it is not our function to write the constitution over again by adding restraints upon legislative power which have not been expressed.

Constitutional restrictions upon the exercise of the right of self-government by the direct representatives of the people should not be expanded by construction beyond the fair and reasonable meaning of the language in which they are written.  The courts should not attempt, by an enlarged and elastic interpretation, to supply omissions conforming to their notions of what should have been expressed; especially when such an interpretation would lead, as in the case at bar, to the unreasonable result already pointed out, namely, of subjecting the very existence of the township organization to the control of the county authorities, by giving the latter power to withhold the sinews of political life from the former.

It should never be held that the legislature has exceeded its constitutional powers, unless such a conclusion is clear and obvious.  We think it is not here.

For these reasons we conclude that in limiting the power of counties to levy taxes for their own purposes, the constitution did not intend thereby to limit the power of taxation, by the boards of directors of organ-

ized townships, for the lawful purposes of the township government.

2.   This conclusion finds support in a recent decision of the United States supreme court, in a cause originating in Missouri, which has been already quoted in the opinion of the majority of the court, and disapproved by them.

We regard that decision as sound in holding that the township is a separate organization from that of the county, and that the taxes levied for its purposes can in no just sense be termed taxes for county purposes.   *Macon County v. Huidekoper* (1890), 134 U. S. 337.

The supreme court of Illinois has also announced a like opinion in reference to counties and townships organized under a law resembling our own.   *Railroad v. McCleave* (1884), 108 Ill. 368.

These decisions seem to give proper effect to the rights both of townships and counties as separate and distinct governmental agencies.   If we cast aside the distinctions which they recognize between the two municipalities, and held that one is a mere annex to the other, and dependent upon its bounty for the power to exist, we should bring about a result which, in our judgment, the terms of the constitution do not sanction.

3.   It is next insisted that the taxes in issue are not collectible without an order of the circuit court as provided by the statute known as the "Cottey law." (R. S. 1889, sec. 7653.)

But it is evident from the terms of that law that it was not intended to apply to taxes touching which no order of the county court is essential to their assessment, levy or collection under the laws of Missouri. (R. S., 1889, sec. 7654.)

These township taxes are leviable by the board of

directors of the township (R. S. 1889, sec. 8473); and the account for township expenses is certified to the county clerk by the president and secretary of the township board at a certain time. Whereupon it becomes the duty of the county clerk to "cause the same to be placed upon the tax books of said township." (R. S. 1889, sec. 8432.) No order of the county court is necessary to the enforcement of the township taxes thus imposed, which fact is an additional argument that such taxes are not considered county taxes in their nature. Hence they do not require for their support any such order of the circuit court as is contemplated by the Cottey law. *Railroad v. McCleave* (1884), 108 Ill. 368.

The judgment of the circuit court should be, in our opinion, affirmed.

We hence most respectfully dissent from the judgment of reversal. Judge GANTT joins in this opinion.