The **THREE RIVERS JUNIOR COLLEGE DISTRICT OF POPLAR BLUFF**, Missouri, a body corporate and subdivision of the State of Missouri, and John Garver, William Becker, Bob Kitterman, A. S. J. Carnahan, James A. "Bud" Holloway and Ben Bidewell, Members of and Comprising *the Board of Trustees of the Three Rivers Junior College District*, Relators,

v.

The Honorable **W. O. STATLER**, Judge of Circuit Court of Cape Girardeau County, Missouri, Sitting as Special Judge, Respondent.

No. 53192.

Supreme Court of Missouri, En Banc.

Nov. 13, 1967.

Rehearing Denied Dec. 11, 1967.

George B. Scott, Jr., John D. Henson, Poplar Bluff, Ziercher, Tzinberg, Human & Michenfelder, Erwin Tzinberg, Robert C. Jones, Clayton, Armstrong, Teasdale, Kramer & Vaughan, Kenneth Teasdale, Bruce E. Woodruff, St. Louis, for relators.

Hendren & Andrae, John H. Hendren, Alex Bartlett, Jefferson City, Roy W. McGhee, Jr., Piedmont, John W. Belew, Doniphan, Edward M. Wetton, Van Buren, for respondent.

Norman H. Anderson, Atty. Gen., Louis C. Defeo, Jr., Asst. Atty. Gen., Jefferson City, for Missouri State Board of Education, amicus curiae.

Dietrich, Tyler, Davis, Burrell & Dicus, William J. Burrell, Clarence H. Dicus, Kansas City, for amicus curiae The Junior College District of Metropolitan Kansas City, Missouri.

Armstrong, Teasdale, Kramer & Vaughan, Kenneth Teasdale, Bruce E. Woodruff, St. Louis, Ziercher, Tzinberg, Human & Michenfelder, Erwin Tzinberg, Robert C. Jones, Clayton, for all other amici curiae.

SEILER, Judge.

Prohibition. The essential facts are not in dispute. The Three Rivers Junior College District of Poplar Bluff, Missouri, was organized in 1966, under Secs. 178.770–

178.890, RSMo 1965 Supp., V.A.M.S. It takes in all the territory in Butler, Carter, Ripley and Wayne Counties and very small portions of Stoddard, Bollinger, Madison and Reynolds Counties. It includes all the school districts in the first four named counties, twenty-five altogether. The vote in Butler County was about 9 to 1 in favor of the organization of the district. The vote in Carter, Ripley and Wayne Counties was about 4 to 1 against the proposition. The Junior College District imposed a tax of 40 cents on the $100 assessed valuation in the district, under Sec. 178.870, RSMo 1965 Supp., V.A.M.S. Resident taxpayers in Carter, Ripley and Wayne Counties filed separate suits to enjoin their respective county clerks and collectors from extending the tax levy on the tax books and collecting same, on the ground that the levy was unlawful for two reasons: (1) the 40 cents levy, when added to other levies by other school districts in the respective counties and the Junior College District, exceeds the constitutional limitation on levies by school districts prescribed in Article X, Section 11(b), 1945 constitution, V.A.M.S., and (2) the Junior College District was illegally formed.

The suits were consolidated and respondent judge enjoined the defendants from extending or collecting the taxes "for Junior College purposes in any local school district where the total levy, including the forty cent levy for Junior College district purposes exceeds the limitation set out in article X, section 11 of the Constitution of Missouri". The order was stayed to give relators time to file a petition for writ of prohibition. We issued our provisional rule and the matter is now before us on whether to make the rule absolute or to quash it.

■ There can be no serious question of the power of the legislature to authorize organization of junior college districts providing instruction for high school graduates. In 1961, Laws of Missouri, 1961, pp. 357–365, RSMo 1961 Supp., Secs. 165.790–165.840, and again in 1963, when the 1961 provisions were repealed and then re-enacted in substantially the same form and language as part of a complete recodification of the school laws generally, Laws of Missouri, 1963, pp. 200–335, RSMo 1965 Supp., Secs. 178.770–178.890, V.A.M.S., the legislature provided a method for organization of junior college districts to "provide instruction, classes, school or schools for pupils resident within the junior college district who have completed an approved high school course". All this was at a time when it was common knowledge that the demand and the need throughout the state for higher education called for expansion of public educational facilities. The legislature evidently believed one solution was to increase the size and capabilities of the junior college system, which until then had been limited to what could be offered by local districts in conjunction with their high schools, RSMo 1959, Sec. 165.123.[1]

■ Article IX, Section 1(b), new in the 1945 constitution, provides that "Specific schools for any contiguous territory may be established by law". Counsel for respondent concede in their brief "there can be no doubt" this provision authorizes "the

---

1. According to the 113th Report of the Public Schools of the State of Missouri, issued by the State Board of Education, as required by Sec. 160.090, RSMo 1959 (now Sec. 161.092, RSMo 1965 Supp., V.A.M.S.), in the school year 1961–62, there were seven junior colleges in the state and the total enrollment was 8,104. With the advent of the junior college district law most of the local junior colleges dropped out of existence or enlarged to form junior college districts and also several new junior college districts were formed. According to the 117th Report, the latest published report available, covering the 1965–66 school year, there were nine junior colleges in the state, seven of which were junior college district operations under the 1963 act, and the total junior college enrollment was 22,573. It is safe to assume the enrollment for 1966–67 was still higher.

formation of * * * junior colleges serving areas of 'contiguous' territory." Even if Article IX, Section 1(b) were not in itself sufficient authorization, we find nothing in the constitution prohibiting the legislature from authorizing the organization of junior college districts or providing for instruction for high school graduates, and it is a basic principle that the General Assembly, unless restrained by the constitution, is vested in its representative capacity with all the primary power of the people. Rathjen v. Reorganized School District R-II of Shelby County, (Mo.Sup.) 284 S.W. 2d 516, 525. The general principle is that the legislature has the power to enact any law not prohibited by the federal or state constitution, State ex rel. Heimberger v. Board of Curators, 268 Mo. 598, 188 S.W. 128, 131, 133; Todd v. Reynolds, (Mo.Sup.) 199 S.W. 173, 175; City of Maryville v. Cushman, 363 Mo. 87, 249 S.W.2d 347, 350. It makes no difference that the 1945 constitution does not specifically mention junior colleges, Kansas City v. Fishman, 362 Mo. 352, 241 S.W.2d 377; City of Maryville v. Cushman, supra, and, as we say, the legislature unquestionably had the power to provide for the establishment of junior college districts.

■ The real question is whether the 1945 constitution prohibits the legislature from giving the junior college district power to levy a tax as provided by Sec. 178.870, RSMo 1965 Supp., V.A.M.S., the applicable part of which provides as follows:

"Any tax imposed on property subject to the taxing power of the junior college district under article X, section 11(a) of the constitution without voter approval shall not exceed * * * forty cents on the hundred dollars assessed valuation in districts having less than one hundred million dollars assessed valuation * * *"

Relators contend that under Article X, Section 11(b) [2] the junior college district has the constitutional power to levy up to 65 cents on the $100 assessed valuation, except that in this particular instance, as permitted by the constitution, this has been further limited by law to 40 cents, Sec. 178.870, supra. Respondent contends, however, that relators' levy of 40 cents must be combined with the levy by local school districts within a particular geographical area where the junior college district overlies the local district to determine whether the constitutional limit has been exceeded; that when so treated the limit is plainly exceeded, as it is stipulated that each of these various school districts in the Three Rivers Junior College District of Poplar Bluff already levies a tax at least equal to that authorized by law to be levied by said separate districts without voter approval; that under Article X, Section 10 (a) [3] and Section 11, taken in its entirety, the legislature is forbidden to extend authority for any ad valorem taxes not specifically provided or authorized in the constitution; that a junior college district tax is not authorized as such and a junior college district cannot go beyond what is already authorized by the constitution for schools. What it comes down to, therefore, is whether the portions of Article X, Section 11(b), which refer to school districts, mean that each school district is authorized

2. Section 11(b) provides, in part, as follows:
   "Any tax imposed upon such property by municipalities, counties or school districts, for their respective purposes, shall not exceed the following annual rates:
   " * * * *
   "For school districts formed of cities and towns * * *—one dollar and twenty-five cents on the hundred dollars assessed valuation * * *

   "For all other school districts—sixty five cents on the hundred dollars assessed valuation."

3. Section 10 (a) provides as follows:
   "Except as provided in this constitution, the general assembly shall not impose taxes upon counties or other political subdivisions or upon the inhabitants or property thereof for municipal, county or other corporate purposes."

to levy the full amount stated, even though there may be more than one layer of school districts covering a given territory, or whether all the school districts in a given area combined must stay within the limit specified. For example, if local district A is one which can levy to $1.25 without voter approval and it levies, say, $1.00 of the $1.25, can the junior college district overlying the same area levy only 25 cents, as respondent contends, or 40 cents, as relators contend? Or, using the same example, if the junior college district levies its full 40 cents, can the local district then levy only 85 cents?

Although counsel for respondent, in an interesting brief, capably argued, make various contentions, their main argument is based on the proposition that it has become firmly established in Missouri constitutional law that under Section 11(b) of Article X of the 1945 constitution and its predecessor, Section 11 of Article X of the 1875 constitution, the question of whether the constitutional limitation as to local tax levies has been exceeded must be determined not by looking at the particular levy alone, because, respondent contends the law is, the constitutional limitations do not mean each particular taxing authority can in all events levy to the full limit; rather the determination must be made by determining whether the levy in question, along with other levies for the same purposes, together exceed the limitation (respondent contending further that junior college districts and local school districts perform the same functions and purposes). In this connection, respondent's main reliance is upon three cases, State ex rel. Hirni v. Missouri Pacific Railway Co., banc, 123 Mo. 72, 27 S.W. 367; State ex rel. Burgess v. K. C., St. J. & C. B. R. Co., banc, 145 Mo. 596, 47 S.W. 500, and State ex rel. Conrad v. Piper, banc, 214 Mo. 439, 114 S.W. 1.

The Hirni case, decided in 1894, is the cornerstone of respondent's position. There

it appeared that Bates County was under township organization, as authorized by the Township Organization Act, approved March 24, 1873, Laws of Missouri, 1873, p. 94.[4] For the years 1889 and 1890, in addition to a county tax of 50 cents on the $100 valuation levied by the county court for county purposes, the court also levied an additional tax of 20 cents on the $100, called a township tax, as authorized by the then statutes. This tax was to meet township expenses and for roads and bridges. Defendant railroad paid the county tax, but refused to pay the township tax, for which suit was brought by the collector. Plaintiff recovered judgment in the trial court, which was reversed outright on appeal, on the ground that the county in levying the tax sued for in excess of 40 cents on the $100 exceeded its power, under the 1875 constitution, which limited the rate of tax for county purposes in this size county to 40 cents on the $100.

The court pointed out that townships were first organized on a corporate basis in Missouri in 1872; that "The autonomy of the county government was not disintegrated or destroyed thereby. Some of its powers, duties, and burdens were simply distributed to its townships"; that townships were created "simply as integral parts of a county exercising a part of the function of the county government", that they "existed only for the purpose of county government"; that at the time of the adoption of the 1875 constitution, "[t]he idea of a township as a separate and independent municipal corporation, with power to levy taxes, had no place in the public mind" (27 S.W. 1.c. 368).

In considering the limitations imposed by Section 11 of Article X, 1875 constitution, on tax rates for county purposes, the court first then said that all taxes for county purposes, "it matters not by whom or how levied, must be within the limits of the

4. Under this act the county court could fix the number of townships in the county, except no new township could be es-

tablished of less than twenty-four square miles. So it would appear there could be numerous townships in each county.

rates therein fixed" and since the purposes for which the township tax was levied were within the class of county purposes the same limitation must apply (27 S.W. l.c. 369).

The court said further (27 S.W. l.c. 370):

" * * * We fail to discover anywhere in the language of the constitution an intention to make any distinction between counties that might adopt township organization, and those that remained under their original county organization, as to the rate of taxation that should be allowed to be levied in each for governmental purposes. No reason can be given why any such distinction should be made. The exigencies of each class are the same, and the same reasons exist for a limitation upon the taxing power to meet them in the one case as in the other. The mere change of the mode of administering county government does not and cannot change the purpose for which taxes are raised to conduct that government, and, as the purpose remains the same in each, so the limitations must be the same in each. This must be so, or the framers of our constitution have wrought in vain to limit the expenses of county government, and their whole legislation on this subject may be set at naught. For to defeat it entirely it will only be necessary for all the counties of the state to adopt township organization, and the legislature may then authorize them, in addition to the taxes allowed by the constitution for county purposes, to levy township taxes ad libitum * * *."

The court goes on to say that the limitation in the constitution "is not upon the authorities levying the tax, but upon the purposes for which the taxes are to be levied, and with respect to revenue. Townships in Missouri, under its constitution, cannot stand on the same plane with counties, cities, towns, and school districts as tax-levying municipalities * * *" (27 S.W. l.c. 371).

The court pointed out that under the township organization provsisions of the

1875 constitution, Section 8, Article IX, only the mode by which the revenue was to be collected was dispensed with where the constitutional provisions for the management of county affairs conflicted with the general law for township organization; that the limitations imposed by the constitution upon the revenue to be raised for any purpose were not thereby affected (27 S.W. l.c. 370). The court also pointed out that "The revenue remains the same after as before township organization, the purposes for which it is raised are the same, and the limitations must be the same * * *" (27 S.W. l.c. 371).

Does the Hirni decision require us to uphold respondent's position? No, because:

1. The Hirni decision leans heaviest on the determination made by the court that the purposes of the township tax and the county tax were the same—county purposes. The only authorized purposes for local taxes in the 1875 constitution were county, city, town and school purposes. The township tax in question was for county purposes; therefore when the county exhausted its county limit it could not authorize any further tax in the guise of a township tax also for county purposes. Here, in our opinion, the attempted analogy between the Hirni case and the case before us breaks down. It cannot be realistically stated that the purposes of the local school district tax and the junior college district tax are the same in the sense that the Hirni opinion regarded the township tax and the county tax to be for the same purposes. The local school district levy is to educate in the elementary, junior high, and high school grades. The junior college district is for those who have completed an approved high school course. This is all education, it is true, but the purposes and exigencies are different. While the extremes are greater in the example about to be used, it can be said literally that both a kindergarten and a modern graduate school are educational institutions, but it is clear to all that the purposes are quite different.

2. The *Hirni* opinion twice stated that townships as independent, tax-levying powers for governmental purposes were unknown to Missourians in 1875. Townships were not considered political subdivisions.[5]

The court pointed out that Section 8, Article IX, of the 1875 constitution made it clear that townships "cannot stand on the same plane with counties, cities, towns and school districts as tax-levying municipalities" (27 S.W. l.c. 368, 370). Here, however, we are dealing with school districts, which have historically been regarded in Missouri as independent, tax-levying powers and were so treated in the 1875 constitution.

3. In the Hirni case the court also said the revenue remained the same in the county after as before township organization. Here, however, the revenue does not remain the same. The junior college district is authorized to be, and is in the case before us, much larger than the area covered by the local school district. In Hirni the township was within the county. Here the local school districts are within the junior college district.

Our conclusion is, therefore, that the Hirni case and the other two cases which followed it, cited by respondent, do not require us to uphold respondent's position in the case before us.[6]

Respondent also contends that the limitation contained in Section 10(a), Article X of the 1945 constitution prevents the junior college district tax. But this section refers to and prohibits the matter of a tax by the state for the performance of local functions, State ex rel. Priest v. Gunn, (Mo.Sup. banc) 326 S.W.2d 314, 326, which is not what we have involved here. The proposed tax by the junior college district is not being imposed by the general assembly upon the inhabitants or property of the junior college district. We therefore overrule this contention.

Turning now to other aspects of the present case:

If the words "For school districts formed of cities and towns" and "For all other school districts" used in Section 11(b), Article X, mean for school districts collectively as respondent, in effect, contends, these would be some of the consequences:

1. Here the junior college district overlaps several different public school districts. Obviously each one of these districts will

5. It was not until 1927, in Harrison and Mercer County Drainage Dist. v. Trail Creek Township, 317 Mo. 933, 297 S.W. 1, that a township was held to be a subdivision of the state.

6. One case is State ex rel. Burgess v. K. C., St. J. & C. B. R. Co., supra, again where the railroad paid the county tax, but not the road tax levied by the townships. The collector argued the road taxes were not levies "for county purposes". The court held the case was governed by the Hirni decision, supra, and upheld the judgment of the circuit court holding the excess over the county levy void. The other case is State ex rel. Conrad v. Piper, supra, a suit to require the collector to give credit to various taxpayers who claimed credit on their county taxes for what they had paid the road overseer on their township road taxes. The court held such credit need not be given, because by statute, of the 40 cents which the coun-

ty could levy, 80% was to be apportioned to the county and 20% to the township, that the township must exercise its taxing power in subordination to the authority of the county court to make the apportionment, and the township could not appropriate to itself part of the county's share of the tax, as would be the effect if the collector had to give credit on the county tax assessment for the amounts paid to the road overseer. However, the case does not hold that the township did not have a right to levy a tax for road purposes. In addition, the court then proceeds to conclude the township board did not have any right to make a tax assessment at this particular time anyway, since the county did not adopt the township organization until the November 1906 election and thus there was no basis for a township assessment in time for a township tax assessment for 1907, so it is not entirely clear on what basis the ultimate affirmance of the trial court was reached.

not have the same tax rate. If the junior college district can only levy to that amount remaining after the individual public school district levy for the area is subtracted from the limit, then the junior college district would be levying a different tax rate in the various public school districts making up the junior college district and this would be violative of Section 3, Article X, of the 1945 constitution requiring uniformity upon the same class of subjects within the territorial limits of the taxing authority.

2. If many of the local school districts levied to the limit before the junior college district, the junior college district might be without tax revenues and unable to function, because tax revenues constitute a substantial portion of the income of a junior college district.[7]

3. Or if the junior college district succeeded in levying its maximum first, then the local school district would be deprived of substantial tax revenue.

4. There would be a never-ending race between the junior college district and the local school districts over which could obtain priority on tax levies. School boards *would be faced with an impossible task in* preparing their annual estimates of the amount of money to be raised by taxation for the ensuing school year.

■ A constitutional provision should never be given a construction which would work such confusion and mischief unless no other reasonable construction is possible, State ex rel. Moore v. Toberman, banc, 363 Mo. 245, 250 S.W.2d 701, 705; State ex rel. and to use of Jamison v. St. Louis-San Francisco R. Co., banc, 318 Mo. 285, 300 S.W. 274, 277.

Respondent's answer to the above is that equally "forced or unnatural" results follow from overruling respondent's position;

that there is then nothing to prevent the legislature from providing for districts to be formed for each of the twelve grades of school, or the kindergarten, for example, with each levying up to either $1.25 or 65 cents without voter approval. However, this assumes that the legislature and the courts would consider the term "school districts" as used in the constitution to mean something far different from what it has been considered to mean in the past and that there could be such a splintering for tax purposes, which matter is not before us and as to which we express no opinion. In any event, the possibility suggested by respondent is not comparable to what is before us, as creation of a junior college district to continue education beyond high school is the addition of a new program adding further education, not the splintering of an existing system into smaller units. The fact is there is nothing in the 1945 constitution prohibiting junior college districts from overlying local school districts, with a tax levy by each one, although historically there has not been a broad system of overlying school districts in Missouri. But times and needs change and present day educational demands are such that some overlapping of school districts is inevitable if education beyond the high school level is to keep up with the need and the demand.

■ ■ There has always been some overlapping of geographical limits of counties and cities, so that many resident taxpayers pay two taxes in the same area. This was handled by the 1945 constitution spelling out the limits for the counties and the cities. The possibility of overlapping or overlying school districts and levies was present when the 1945 constitution was adopted, but nothing was done to prohibit each school district from levying taxes or to limit collectively the amount of overlying taxes.[8] The language of Section 11(b) is

7. According to the 117th Report of the Public Schools of the State of Missouri, supra, the local tax receipts for the seven junior college districts over the state

for the 1965–66 school year were $6,-422,518.

8. To illustrate, the legislature, in 1917, enacted a law creating a colored consoli-

not "For school districts formed of cities and towns—collectively a total of one dollar and twenty-five cents" or "For all other school districts collectively in the same county or area—a total of sixty-five cents". The language simply is "For school districts formed of cities and towns" and "For all other school districts". In our opinion this language does not prohibit the legislature from authorizing a junior college district overlying one or many local school districts to levy a separate tax as set forth in Sec. 178.870, supra, and we return to the basic principle mentioned earlier that the General Assembly, unless restrained by the constitution, is vested in its representative capacity with all the primary power of the people and that the legislature has the power to enact any law not prohibited by the federal or state constitution, see cases on page 3, supra. We therefore hold respondent was in error in holding that the 40 cents levy, when added to the other levies by other school districts in the respective counties and the junior college district, exceeds the constitutional limitation on levies by school districts prescribed by Section 11(b), Article X of the 1945 constitution. Whether the junior college district levy exceeds the constitutional limitation must be determined by the size of its levy alone.

■ ■ Even if we were to conclude the language of Section 11(b) referred to above is ambiguous, it would not change the result which we reach in view of the construction which the legislature and the executive have placed on the same, in light of the rule that such construction, while not binding or conclusive, is entitled to weight, if the meaning of the constitutional provisions are doubtful, and should not be departed from unless manifestly erroneous, In re Matter of V____, (Mo.Sup. banc) 306 S.W.2d 461, 465; Gantt v. Brown, banc, 244 Mo. 271, 149 S.W. 644, 645–646. The legislature and the executive in enacting and approving the junior college district legislation authorized a junior college district to include one or more local school districts and to be "in addition to any other school districts existing in any portion of the area", Secs. 178.770 and 178.790, RSMo 1965 Supp., V.A.M.S. Clearly they believed there was no constitutional requirement that the junior college district levy authorized by Sec. 178.870, supra, (without which the junior college district could not perform the important functions assigned to it) must be measured cumulatively with the local school district levies. We are unable to say that such construction is manifestly erroneous.

■ As to the respondent's final contention the junior college district was illegally formed, such a challenge as here attempted cannot be maintained by county resident taxpayers by way of an injunction suit, but only by the state by quo warranto, as decided in State ex rel. Junior College District of Sedalia v. Barker, (Mo.Sup. banc) 418 S.W.2d 62.

The provisional rule is therefore made absolute.

All concur.

---

dated high school district, authorizing a high school for colored children, with authority in the directors to raise money in the same manner as provided by law for city or town school districts,

Laws of Missouri, 1917, p. 498, Sec. 11256, R.S.Mo.1919, repealed Laws of Missouri, 1957, p. 452. This statute contemplated a complete new school and involved an overlay of districts and taxes.